**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**GREGORY GREEN,**

       **Petitioner,**

**vs.**                              **Case No. 4:06cv588-RH/WCS**

**JAMES R. McDONOUGH,**

       **Respondent.**

_____/


**REPORT AND RECOMMENDATION TO DISMISS HABEAS CORPUS PETITION**

      This cause is before the court on a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 and appendix in support.  Docs. 1 (petition), 1-2 (appendix) and 4 (index of appendix).  Petitioner was directed to either file a motion to proceed in forma pauperis or pay the filing fee, and he paid the fee.  Docs. 3 and 5.

      Upon review of the petition and exhibits it plainly appears that Petitioner is not entitled to relief, and it is recommended that the petition be summarily dismissed.  § 2254 Rule 4 (authorizing dismissal where it plainly appears from petition and any attachments that the petitioner is not entitled to relief).

Petitioner claims that the Florida Parole Commission (the Commission) violated due process and equal protection in setting his presumptive parole release date (PPRD) and in denying relief on review.  Doc. 1, p. 5.[1]  He claims that he filed a petition for formal review which was denied by the Commission without addressing any of his claims, then filed a petition for writ of mandamus.  *Id.*  He asserts that the Commission's response was incomplete, and he so argued in state court, but the court "mirrored the Commission's Response to the Court and made no independent findings of its own." *Id.*, p. 6.  Petitioner asserts that while there is no right to parole he has a right to proper consideration for parole, and that the Commission improperly relied upon an uncharged offense and misinformation from the State.  *Id.*, p. 7.  He claims the state court failed to provide relief though he supplied "clear and convincing evidence . . . that the Florida Parole Commission improperly considered an invalid conviction, skewed the actual circumstances of Petitioner's offense in determining his eligibility for parole, used flippant and disparaging remarks toward Petitioner, miscalculated his PPRD, and improperly set Petitioner's next review off by five years."  *Id.*  Petitioner claims that the state court denied due process by failing to address all of his argument.  *Id.*  For relief, Petitioner seeks "proper consideration for parole."  *Id.*, p. 9.

References to exhibits (App. A-H) are to those attached to the appendix (doc. 1-2).  By way of background, the following is set forth in the order of the circuit court:

> On April 21, 1978, Plaintiff was convicted of Third Degree Murder in Leon County case no. 77-1014 and was sentenced to 12 years in state prison. He was paroled on April 7, 1981.  On March 25, 1982, Plaintiff was

---

[1] Petitioner has inserted three pages between pp. 4 and 6 of the form petition. References to page numbers are to those that appear in the electronic docket.

Case 4:06-cv-00588-RH-WCS   Document 6   Filed 01/29/07   Page 3 of 7

convicted of First Degree Murder in Leon County case no. 81-1640 and was sentenced to Life in state prison without the possibility of parole for 25 years.  On April 28, 1982, the Parole Commission revoked Plaintiff's parole.  On September 27, 2005, Plaintiff received his initial parole interview for the purpose of establishing a presumptive parole release date (PPRD).  At the Parole Commission meeting held on November 9, 2005, the Commission established Plaintiff's PPRD to be October 11, 2035.  On January 5, 2006, Plaintiff filed his request for administrative review of the Commission action establishing his PPRD, and on February 1, 2006, the Commission made no change to Plaintiff's PPRD.

App. H, p. 1.

It was recommended that Petitioner's PPRD be set for September 11, 2023, after service of 547 months.  App. C, pp. 1-2.  This was based on 87 months for the 1977 offense (aggravated for use of a knife) and 460 months for the 1981 offense (aggravated for use of a knife).[2]  *Id.*  The Commission did not affirm the recommendation, but instead assigned 32 months for the 1977 offense (set at the top of the range with no aggravating factors) and 660 months for the 1982 offense, for a total of 692 months.  *Id.*  The top of the range for the 1981 offense was 300 months; it was aggravated for the use of a knife (60 months), because it "involved exceptionally brutal and heinous behavior indicative of wanton cruelty in that the inmate stabbed the victim 13 times" (180 months), and as "more serious in that the offender also stabbed another person on the arm" (120 months).  *Id.*, p. 2.

Petitioner's next parole interview date was set within five rather than two years based on the following findings:

_____

[2] In his arguments Petitioner refers to the O# commitment and the A# commitment.  The third degree murder in 77-1014 is the O# offense and the first degree murder in 81-1640 is the A# offense, as set forth in the Commission's Action establishing the PPRD.  App. C, pp. 1-3.  To avoid confusion the court refers to the offenses by the years (1977 and 1981) rather than to these letters.

1. Deadly weapon used in the offense.
2. Escalating pattern of criminal conduct.
3. Heinous nature of the offense.
4. Any release would pose a risk to the public.

*Id.*, p. 3.

Petitioner sought review of his PPRD by the Commission.  App. D.  He argued

that mitigating factors under the Florida Administrative Code (his diminished mental

capacity, community resources, and program achievement) were not properly

considered.  *Id.*, pp. 1-3.  He argued that his PPRD was improperly aggravated based

on the heinous nature of the offense, based on erroneous information provided by

Assistant State Attorney Lotaine.  *Id.*, pp. 3-4.  Specifically, he complained that Lotaine

told the Commission Petitioner killed someone with a knife in the 1977 case yet failed to

say it was done in self defense.  *Id.*, p. 4.[3]  Petitioner complained that Lotaine told the

Commission that in the 1981 case Petitioner stabbed the victim 13 times, and then cut

his younger brother when he attempted to stop Petitioner from stabbing the victim.  *Id.*

This was incorrect, it is claimed, because there were actually ten knife wounds, of which

only four were stabbing wounds (and only two of those life threatening) and the rest

were minor lacerations.  *Id.*  It was a complete misrepresentation as to the other

stabbing, Petitioner claims, because "Perkins specifically states that the reason he was

injured was due to his intervention in an attempt to prevent his brother from stabbing the

victim further," and "almost immediately after Mr. Perkins was injured, Mr. Greene [sic]

stopped the attack and fled."  *Id.*, p. 5.

---

[3] Since the Commission did not follow the recommendation that the 1977 offense
be aggravated for use of a knife, this is a moot point.

Petitioner claimed the escalating pattern of criminal conduct was based on the erroneous belief that Petitioner attacked his brother during the commission of the crime, that this was not an enumerated aggravator and was based on faulty reasoning.  *Id.*, pp. 5-6.  Petitioner also "noted" that he "takes exception with the 'off-colored' remark made by one of the examiners 'this guy just loves to stab people,' when no such evidence was presented to the examiners."  *Id.*, p. 6.  Petitioner challenged the setting of his next parole review in five rather than two years because the reasons relied upon by the Commission were "ill founded."  *Id.*  He claims that the fact a deadly weapon was used was not a proper basis as most homicides involve the use of a deadly weapon, and there was no showing that he was a risk to the public.  *Id.*, pp. 6-7.  Finally, Petitioner asserted that – while he was not saying it was excusable – he thought "the death of this young woman" in the 1981 case was not only due to the stab wounds "but medical negligence was the proximate and final cause."  *Id.*, p. 7.

In Florida,

> The setting of the presumptive parole release date and the decision whether that date is to become the effective parole release date are matters left ultimately to the discretion of the Commission. . . .  Since the decision whether to release an inmate on parole is a matter committed to the discretion of the Commission without the mandate of statute, *no entitlement to or liberty interest in parole is created by the Florida statutes.*

Staton v. Wainwright, 665 F.2d 686, 688 (5th Cir. Unit B), *cert. denied*, 102 S.Ct. 1757 (1982)[4] (emphasis added); *see also*, Hunter v. Florida Parole & Probation Commission,

---

[4] The Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions prior to October 1, 1981, and all former Fifth Circuit Unit B decisions after October 1, 1981.  Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc);  Stein v. Reynolds Securities, Inc., 667 F.2d 33, 34 (11th Cir.1982).

674 F.2d 847, 848 (11th Cir. 1982) (agreeing with <u>Staton</u> "that no liberty interest in parole was created by the Florida statutes."); <u>Jonas v. Wainwright</u>, 779 F.2d 1576, 1577-78 (11th Cir.) *cert. denied*, 479 U.S. 830 (1986) (following <u>Hunter</u>, finding "[t]he claim that the Commission did not abide by its own rules and regulations does not allege a constitutional violation."); <u>Paschal v. Wainwright</u>, 738 F.2d 1178 and n. 9 (11th Cir. 1984) (citing <u>Staton</u>, other citations omitted).

The claim that the Commission denied due process in setting or improperly aggravating his PPRD does not entitle Petitioner to relief as he has no liberty interest in his PPRD and no entitlement to due process.  Though Petitioner acknowledges no entitlement to parole and asserts his claim is that he has been denied consideration for parole, the record is to the contrary.  Indeed, the arguments he faults the Commission and state court for not considering are facially unpersuasive.

Finally, Petitioner has not shown that setting his parole interview date in five rather than two years creates a significant risk of increasing his punishment.  *Cf.* <u>Garner v. Jones</u>, 529 U.S. 244, 250, 255, 120 S.Ct. 1362, 1367, 1370, 146 L.Ed.2d 236 (2000) (reviewing a civil rights action under 42 U.S.C. § 1983, finding the retroactive change in frequency of parole interviews must create a "sufficient risk of increasing the measure of punishment attached to the covered crimes" to fall within the ex Post Facto Clause) (citations omitted).  The earlier PPRD date (recommended but not adopted) was in 2023.  Petitioner has twice been convicted of murder, and the second offense was committed shortly after his release on parole for the first offense. [5]

_____

[5] This is clear enough from the discussion of the state court quoted above, that Petitioner was released on April 7, 1981, and his parole was revoked on March 25,

It is therefore respectfully **RECOMMENDED** that the § 2254 petition challenging the actions of the Florida Parole Commission be **SUMMARILY DISMISSED**, and that the clerk be directed to forward copies of this recommendation and the order adopting it to Respondent and the Florida Attorney General.

**IN CHAMBERS** at Tallahassee, Florida, on January 29, 2007.


**s/    William C. Sherrill, Jr.**
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

---

1982.  The web site of the Department of Corrections (DOC) confirms that Petitioner was released from DOC custody on April 7, 1981, and further indicates that the second offense was committed on September 5, 1981.